NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GEORGE G. NEELY,                     :
                                     :  Civil Action No. 06-5190 (PGS)
            Petitioner,              :
                                     :
      v.                             :         O P I N I O N
                                     :
GEORGE HAYMAN, et al.,               :
                                     :
            Respondents.             :

APPEARANCES:

George G. Neely, Pro Se
#253
Special Treatment Unit
30-35 Hackensack Avenue
P.O. Box 699
Kearny, NJ 07932

David L. DaCosta, Esq.
Office of the NJ Attorney General
25 Market Street, P.O. Box 112
Trenton, NJ 08625
Attorney for Respondents

SHERIDAN, District Judge

     Petitioner, George G. Neely, filed the within petition for a

Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254.  Respondents

filed an Answer and relevant state court record.  The Court has

considered all submissions.  For the reasons set forth below, the

Petition will be denied.  Petitioner's application for pro bono

counsel will be dismissed as moot.

## BACKGROUND

The facts of this case were recounted below and this Court,

affording the state court's factual determinations the

appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply

reproduce the Superior Court of New Jersey, Appellate Division's

("Appellate Division") factual recitation:

> There is no doubt that G.G.N. committed sexually
> violent offenses within the definition of the SVPA.[1]
> He does not contend otherwise.  In 1981 he pled guilty
> to three rapes and to one attempted rape, all occurring
> within the space of a month.  G.G.N. was twenty-one
> years old at the time.  He has also since admitted to a
> date rape in 1979 and to forced intercourse with two
> girls when he was in high school.  G.G.N. also has
> convictions for nonsexual offenses such as larceny and
> possession of stolen property.
>
> In 1981 G.G.N. was evaluated at the Adult
> Diagnostic and Treatment Center (ADTC) incident to his
> plea.  His conduct was found to be repetitive and
> compulsive, thus falling under the purview of the New
> Jersey sex offenders law, N.J.S.A. 2C:47-1 to -10.  He
> was sentenced to the ADTC at Avenel.  He was given
> consecutive sentences aggregating forty years that
> resulted in a "max out" date of May 20, 2002.

In the Matter of the Civil Commitment of G.G.N., 372 N.J. Super.

42, 47 (App. Div. 2004).

Petitioner spent six years in state prison, then was

transferred to the ADTC for sex offender treatment.  As

Petitioner was about to complete his sentence, the Attorney

General filed a petition for civil commitment pursuant to the

---

[1]  "G.G.N." are Petitioner's initials.  "SVPA" refers to the
New Jersey Sexually Violent Predator Act, N.J.S.A. 30:4-27.24, et
seq.

SVPA.   A commitment hearing was held and Petitioner was

committed.   He appealed his commitment, and the Appellate

Division reversed and remanded, finding that the State failed to

prove by clear and convincing evidence that Petitioner was a

sexually violent predator as defined by the SVPA.   In re Civil

Commitment of G.G.N., 372 N.J. Super. 42 (App. Div. 2004).

On remand, the trial court conducted hearings for six days.

According to the Appellate Division decision after the rehearing,

the following evidence was presented, in relevant part:

- Testimony of Turek, Petitioner's primary therapist for over eight years: Turek testified that Petitioner's treatment participation was "excellent;" his remorse was genuine; Petitioner was not "faking;" Petitioner's admission to engaging in sexual relations with three inmates was caused by his frustration with prison life and not reflective of past behavior; Petitioner was not at high risk to re-offend, but had certain personality traits that were unlikely to change and had trouble following rules.

- Testimony of Dr. Iser: Petitioner had good attendance and is verbal at therapy groups and was insightful, but got involved with things at the STU that hindered his treatment. Petitioner's rule violations showed defiance on his part.

- Testimony of Dr. Foley: Petitioner had history of antisocial behavior; met most, if not all of criteria for antisocial personality disorder; and had behavior involving a paraphilic focus.

- Testimony of Dr. Seigel: Petitioner was in high risk category to re-offend; he had antisocial personality disorder traits; tranpsychopathic trends; his rule infractions demonstrated that treatment was not effective in modulating his behavior; Petitioner had paraphilia NOS.

- Testimony of Dr. Zieguer: Petitioner had paraphilia NOS and personality disorder NOS with antisocial borderline features; he was very high risk and had difficulty

controlling sexually offending behavior; Petitioner's risk
to re-offend was "unarguably high."

- Testimony and report of Dr. Carlson: Petitioner had
  paraphilia NOS, antisocial personality disorder with
  psychopathic traits, and posed a significant risk of sexual
  re-offense if released.

- Report of Dr. Schattner: Petitioner had paraphilia NOS with
  psychopathic features.

See In re Commitment of G.G.N., 2006 WL 533354 (N.J. Super.  App.

Div. Feb. 10, 2006).

On January 11, 2005, Petitioner was found to be a sexually

violent predator based on the testimony presented and credibility

findings in favor of the State's psychiatric expert witnesses.

This time, on February 10, 2006, the Appellate Division affirmed

Petitioner's commitment.   The Appellate Division stated:

> We are satisfied that the proofs presented by the
> State conformed with the remand and that the trial
> court's determination that the requirements of N.J.S.A.
> 30:4-27.26 were proved by clear and convincing evidence
> was based on substantial credible evidence.   The trial
> court here was presented with ample testimony regarding
> the actuarial test scores, G.G.N.'s diagnosis of
> paraphilia and antisocial personality disorder and of
> past and present institutional infractions.   The court
> also considered the testimony regarding G.G.N.'s
> progress in ADTC treatment and STU treatment.   The
> trial court did not abuse its discretion in according
> weight to the various forms of evidence presented.   We
> are satisfied that the court's findings concerning the
> relationship between G.G.N.'s institutional infractions
> and G.G.N.'s sexual acting out were based on
> substantial evidence in the record.   The judge's
> findings accepted Dr. Zieguer's opinion that the
> continuing infractions constitute the clinical evidence
> that G.G.N.'s paraphilia and antisocial personality
> disorder continue to the present day and that his
> continued infractions in a structured environment are
> connected to sex offending and the risk of recidivism.

See In re Commitment of G.G.N., 2006 WL 533354 (N.J. Super.  App. Div. Feb. 10, 2006), at *8.

On April 11, 2006, the New Jersey Supreme Court denied certification.

The instant petition was filed on October 30, 2006.  On November 9, 2006, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  Petitioner filed an amended petition naming the administrator of the facility in which he was housed as a respondent on November 29, 2006.  On February 21, 2007, Respondents filed an Answer and the relevant state court record.

## DISCUSSION

### A.    Petitioner's Claims.

Petitioner asserts the following five arguments for habeas relief:

1.    The Appellate Court erred when it failed to enforce its prior decision.

2.    Petitioner's Due Process rights were violated by the State's failure to produce the testimony of a treatment team physician as required by the SVPA and/or any proof of future dangerousness other than net opinion.

3.    The hearing court erred in relying on hearsay contained in exhibits and the testimony of expert witnesses in reaching its decision.

4.    The hearing court and Appellate Division denied Petitioner fundamental fairness when they failed to consider conditional discharge.

> 5. The Court's failure to review Petitioner's discharge based on his ailing medical conditions violates his Eighth and Fourteenth Amendment rights.

(Petition, ¶ 11).   It appears that Petitioner has raised the instant claims before the New Jersey state courts.   To the extent that the claims have not been presented, this Court will excuse the exhaustion requirement, as the claims are not meritorious. See 28 U.S.C. § 2254(b)(2); Duncan v. Walker, 533 U.S. 167, 203 n.6 (2001)(noting that under § 2254(b)(2), a district court may deny non-exhausted, non-meritorious claims); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003)(same).

B.    Standards Governing Petitioner's Claims.

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.   See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

7

prisoner's case." <u>Id.</u> at 413.   Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.   <u>See</u> <u>id.</u> at 411; <u>see</u> <u>also</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000), <u>cert.</u> <u>denied</u>, 532 U.S. 980 (2001); <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 891 (3d Cir.), <u>cert.</u> <u>denied</u>, <u>Matteo v. Brennan</u>, 528 U.S. 824 (1999).   Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.   <u>See</u> <u>Werts</u>, 228 F.3d at 197; <u>see</u> <u>also</u> <u>Jacobs v. Horn</u>, 395 F.3d 92, 100 (3d Cir. 2005).

     With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.   <u>See</u> <u>Abu-Jamal v. Horn</u>, 2001 WL 1609690 at *12 (E.D. Pa. December 18, 2001).   In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations.   <u>See</u> <u>id.</u>   Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."   <u>Id.</u>; <u>see</u> <u>also</u> 28 U.S.C. § 2254(e)(1).   The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing

evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-supported and subject to the presumption of correctness is not unreasonable."  Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review."  Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).  A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

C.   Petitioner's Claim Regarding Prior Decisions (Ground 1).

In Ground 1 of his Petition, Petitioner states that the Appellate Division set a "clear roadmap" in its first review of his case, but then on remand, the State did not present firsthand proof of Petitioner's seventeen years of treatment, "nor an adequate explanation as to how his institutional infractions were predicative of a likelihood of sexual re-offense."   Petitioner argues that the Appellate Division decision ordering remand is the law of the case and binding on the trial court for purposes of remanded proceedings.

Six days of evidence and testimony, including new evidence, was presented at the rehearing.   The Appellate Division stated on appeal of the rehearing that: "We are satisfied that the proofs presented by the State conformed with the remand and that the trial court's determination that the requirements of *N.J.S.A.* 30:4-27.26 were proved by clear and convincing evidence was based on substantial credible evidence."   See In re Commitment of G.G.N., 2006 WL 533354 (N.J. Super.   App. Div. Feb. 10, 2006), at *8.

This Court's task on habeas review is to determine whether or not Petitioner has shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

10

Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  In this case, the Court sees no reason to upset the judgment of the state courts.  Petitioner's claim that the Appellate Court did not enforce its prior decision is clearly without merit, and does not warrant habeas relief.

D.    **Petitioner's Claim Regarding Treatment Team Testimony (Ground 2).**

Petitioner argues that his due process rights were violated because the State failed to produce the testimony of a treatment team physician as required by the SVPA.  He argues that Drs. Carlson and Zeiguer were not part of the treatment team, and only interviewed him for forensic purposes.

In essence, Petitioner argues that his due process rights were violated because the State did not abide by New Jersey state law, in particular, N.J.S.A. 30:4-27.30(b), which provides:

> A psychiatrist on the person's treatment team who has conducted a personal examination of the person as close to the court hearing date as possible, but in no event more than five calendar days prior to the court hearing, shall testify at the hearing to the clinical basis for the need for involuntary commitment as a sexually violent predator.  Other members of the person's treatment team and any other witness with relevant information offered by the person or the Attorney General shall also be permitted to testify at the hearing.

Recently, this issue was addressed by the state courts

11

concerning Dr. Zeiguer himself, in <u>In re Civil Commitment of</u>

<u>A.H.B.</u>, 386 N.J. Super. 16, 24-26 (App. Div.), <u>certif.</u> <u>denied</u>,

188 N.J. 492 (2006).   In that case, the Appellate Division noted:

> There is a difference between the SVPA's definition of
> "treatment team" and the definition contained in the
> civil commitment statute for mentally ill persons.   In
> the involuntary commitment of mentally ill persons'
> statute, "treatment team" is defined, in part, as "one
> or more persons, including at least one psychiatrist or
> physician, and may include a psychologist, social
> worker, nurse and other appropriate service providers."
> N.J.S.A. 30:4-27.2dd.   The definition further specifies
> that the "treatment team provides mental health
> services to a patient of a screening service, short-
> term care or psychiatric facility."   *Ibid.*
>
> In contrast, the SVPA defines "[t]reatment team" as
> including "individuals, agencies or firms which provide
> treatment, supervision or other services at a facility
> designated for the custody, care and treatment of
> sexually violent predators."   N.J.S.A. 30:4-27.26.
> Thus, the SVPA more broadly defines the "treatment
> team" to include not only individuals but also
> "agencies or firms."
>
> Dr. Zeiguer is employed by the Division of Mental
> Health Services in the Department of Human Services,
> which agency provides the treatment "appropriately
> tailored to address the specific needs of sexually
> violent predators."   N.J.S.A. 30:4-27.34.   As a
> psychiatrist working for the Division at the STU, which
> houses only "sexually violent predators," *In Matter of*
> *Civil Commitment of D.L. and C.M.,* 351 *N.J. Super.* 77,
> 80, 797 A.2d 166 (App. Div. 2002), *certif. denied,* 179
> *N.J.* 373, 845 A.2d 1255 (2004), we consider Dr.
> Zeiguer, to be a member of A.H.B.'s treatment team,
> even though the doctor himself may not have provided
> any treatment services to A.H.B.   *See N.J.S.A.* 30:4-
> 27.26.

<u>In re Civil Commitment of A.H.B.</u>, 386 N.J. Super. 16, 25-26 (App.

Div.), <u>certif.</u> <u>denied</u>, 188 N.J. 492 (2006).

In addition to the fact that Petitioner's claim appears to have no merit under state law, for purposes of determining a violation of his federal due process rights, Petitioner's claim also has no merit.  A state's misapplication of its own law may constitute a violation of due process only in "rare" cases.  See id. ("when that misapplication has the effect of depriving a person of life, liberty, or property without due process of law in violation of the Fourteenth Amendment, the resulting federal constitutional error can be corrected by a federal habeas court").  Evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial."  Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir.), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228, 236 (1941)(holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure."  Hutchins, 1991 WL 167036 at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations

13

omitted).   The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).   An error is not harmless if "it aborts the basic trial process or denies it altogether."   Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

Applying these principles to the instant case, this Court finds that Petitioner's case is not the "rare" instance where evidentiary rulings have violated his rights to due process.   A review of the whole record demonstrates that the hearing process was fundamentally fair.   Petitioner's counsel was present and was available to cross-examine and present evidence regarding Petitioner's mental capacity and his likelihood to engage in acts of sexual violence if not confined.

Nonetheless, even if the hearing judge's rulings were in error, there was sufficient evidence for the judge to conclude by clear and convincing evidence that the Petitioner was a sexually violent predator in need of further confinement.   As noted in the Appellate Division's opinion regarding the rehearing, Petitioner's history of sex crimes, behavior while confined, and diagnoses of paraphilia and antisocial personality disorder were

14

amongst sufficient factors to find that Petitioner was likely to engage in future acts of sexual violence, if not confined.

Thus, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the state court determinations have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Accordingly, this ground for a writ of habeas corpus will be denied.

E.    Petitioner's Claim Regarding Hearsay Evidence (Ground 3).

Petitioner argues that the hearing court should have conducted an evidentiary hearing to "prune inadmissible hearsay from the record and reports offered by the State." Petitioner argues that the hearing court's reliance on hearsay evidence violated his right to due process and fundamental fairness, and "his right to cross-examine evidence and witnesses against him."

The Appellate Division, in its opinion on appeal of the rehearing, found Petitioner's claim to be without merit based on New Jersey law concerning hearsay evidence and exceptions, and admission of reports to explain the basis for an expert's opinion. See In re Commitment of G.G.N., 2006 WL 533354 (N.J. Super. App. Div. Feb. 10, 2006), at *8.

15

As noted, *supra*, in section D of this opinion, a state court's misapplication of its own law may violate due process in rare instances, and evidentiary rulings may violate due process when the petitioner was denied fundamental fairness at trial. See Section D, *supra*.  In this case, for the reasons explained in Section D, *supra*, this is not the rare instance when due process has been violated as a result of a misapplication of a state law or incorrect evidentiary ruling.  The hearing judge was presented with ample evidence to support her finding that Petitioner was a sexually violent predator and required continued confinement. Petitioner was not denied fundamental fairness at his hearing. Petitioner's argument that he did not have the opportunity to cross-examine witnesses is without merit, as Petitioner was represented by counsel at the hearing, and witnesses were available to be cross-examined.

Petitioner is not entitled to habeas relief on this ground.

F.    Petitioner's Claim Regarding Conditional Discharge (Ground 4).

Petitioner argues that the hearing judge denied him fundamental fairness when she refused to consider him for conditional release.

The Appellate Division examined this claim under state law, and found:

> G.G.N. contends that the trial court erred in rejecting G.G.N.'s attempt to submit proof that conditional discharge was appropriate.  "[I]f [a]

16

person is a sexually violent predator, conditional
discharge is not an option."  Conditional discharge
should only be considered if a person is no longer
likely to be a sexually violent predator.  Where a
sexually violent predator is statutorily required to be
committed, a trial court has "no authority to place the
offenders in a less restrictive facility."

We are convinced that the trial court's finding
that G.G.N. clearly and convincingly continues to pose
a risk of committing sexually violent acts was based on
substantial credible evidence.  Thus, the trial court
was not authorized to consider a conditional discharge
for G.G.N.

See In re Commitment of G.G.N., 2006 WL 533354 (N.J. Super.  App.

Div. Feb. 10, 2006), at *10 (citations omitted).

Again, Petitioner seeks to challenge an alleged

misapplication of state law in this federal habeas petition.  As

stated in Section D, supra, Petitioner has not demonstrated that

the state court's failure to consider him for conditional

discharge, which apparently was proper under the state statute,

violated his federal rights.  Petitioner's hearing was fair, and

ample evidence was presented to support the state court's finding

that Petitioner is a sexually violent predator in need of

continued confinement.

Petitioner is not entitled to habeas relief on this ground.

G.   Petitioner's Claim Regarding Medical Condition (Ground 5).

Petitioner argues in Ground 5 that he suffers from serious

medical conditions, which the hearing judge did not consider in

denying him conditional discharge.  Petitioner states that this

violates his Eighth and Fourteenth Amendment rights against cruel

17

and unusual punishment, as the SVPA was not intended to be an "unofficial death sentence."

For the reasons stated above, this Court finds that Petitioner has not stated a valid habeas claim regarding the hearing judge's refusal to consider him for conditional discharge.  Further, if Petitioner believes that his constitutional rights are being violated within the facility in that he does not have access to proper medical care, he may file a civil complaint seeking damages or injunctive relief in the federal district court as appropriate.  His claims are not proper in this federal habeas action, and he is not entitled to habeas relief on this claim.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

18

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.   Accordingly, no certificate of appealability will issue.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied.   Petitioner's pending motion for counsel will be dismissed as moot.   An appropriate Order accompanies this Opinion.

_____
PETER G. SHERIDAN
United States District Judge

Dated: